**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

MAKE THE ROAD NEW YORK, AFRICAN
SERVICES COMMITTEE, CENTRAL AMERICAN
REFUGEE CENTER NEW YORK, CATHOLIC
CHARITIES COMMUNITY SERVICES
(ARCHDIOCESE OF NEW YORK), CATHOLIC
LEGAL IMMIGRATION NETWORK, INC.,
ALICIA DOE, BRENDA DOE, CARL DOE,
DIANA DOE, and ERIC DOE,

        Plaintiffs,

   - against -

MICHAEL POMPEO, in his official capacity as
Secretary of State; the UNITED STATES
DEPARTMENT OF STATE; DONALD TRUMP, in
his official capacity as President of the United States;
ALEX AZAR, in his official capacity as Secretary of
the Department of Health and Human Services; and
the UNITED STATES DEPARTMENT OF
HEALTH & HUMAN SERVICES,

        Defendants.

No. 1:19-cv-11633-GBD

ORAL ARGUMENT REQUESTED

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'**
**MOTION FOR A TEMPORARY RESTRAINING ORDER**

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT .................................................................................... 1

FACTS ........................................................................................................................... 3

I.    Plaintiffs Sought to Enjoin Implementation of the IFR Because It Rewrites Decades
      of Settled Understanding of the Meaning of Public Charge ................................................ 3

II.   Defendants Attempted to Avoid an Injunction, and then Delay any Hearing, by
      Making Representations About the IFR's Implementation That Were Not True .............. 5

ARGUMENT .................................................................................................................. 8

I.    Plaintiffs Are Likely to Succeed on Claims that the IFR is Contrary to Law, Was
      Promulgated in Violation of the APA, and Is Arbitrary and Capricious ........................... 9

II.   Plaintiffs Will Suffer Irreparable Harm Absent a Temporary Restraining Order ............. 13

III.  The Balance of Equities Support a Temporary Restraining Order .................................. 16

CONCLUSION ............................................................................................................. 17

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Andino* v. *Fischer*,
    555 F. Supp. 2d 418 (S.D.N.Y. 2008) ................................................................................ 8

*Burlington N. R. Co.* v. *Dep't of Revenue of Wash.*,
    934 F.2d 1064 (9th Cir. 1991) ...................................................................................... 14

*Centro de La Comunidad Hispana de Locust Valley* v. *Town of Oyster Bay*,
    868 F.3d 104 (2d Cir. 2017) ........................................................................................ 14

*City of N.Y.* v. *Golden Feather Smoke Shop, Inc.*,
    597 F.3d 115 (2d Cir. 2010) ................................................................................... 13, 14

*Council of the S. Mountains, Inc.* v. *Donovan*,
    653 F.2d 573 (D.C. Cir. 1981) ..................................................................................... 10

*Fish* v. *Kobach*,
    840 F.3d 710 (10th Cir. 2010) ..................................................................................... 14

*Grand River Enter. Six Nations, Ltd.* v. *Pryor*,
    481 F.3d 60 (2d Cir. 2007) .......................................................................................... 13

*League of Women Voters* v. *Newby*,
    838 F.3d 1 (D.C. Cir. 2016) ......................................................................................... 16

*Mack Trucks, Inc.* v. *EPA*,
    682 F.3d 87 (D.C. Cir. 2012) ....................................................................................... 10

*Make the Rd. N.Y.* v. *Cuccinelli*,
    No. 19 Civ. 7993, 2019 WL 5484638 (S.D.N.Y. Oct. 11, 2019) ..................................... 12, 14, 15

*Make the Rd. N.Y.* v. *McAleenan*,
    405 F. Supp. 3d 1 (D.D.C. 2019) .................................................................................. 11

*Martinez* v. *McAleenan*,
    385 F. Supp. 3d 349 (S.D.N.Y. 2019) ............................................................................ 15

*Mullins* v. *City of New York*,
    626 F.3d 47 (2d Cir. 2010) .......................................................................................... 13

*Nat. Resources Defense Council* v. *Nat'l Highway Traffic Safety Admin.*,
    894 F.3d 95 (2d Cir. 2018) ................................................................................... 9, 10, 11

*Washington* v. *Reno*,
    35 F.3d 1093 (6th Cir. 1994) ....................................................................................... 16

*United States* v. *Reynolds*,
    710 F.3d 498 (3d Cir. 2013) ........................................................................................ 11

*Saget* v. *Trump*,
    375 F. Supp. 3d 350 (E.D.N.Y. 2019) ........................................................................ 14, 16

*Strouchler* v. *Shah*,
    891 F. Supp. 2d 504 (S.D.N.Y. 2012) ............................................................... 16

*Winter* v. *Nat. Res. Def. Counsel*,
    555 U.S. 7 (2008) ............................................................................................. 8

**STATUTES**

5 U.S.C. § 553(a)–(d) ............................................................................................. 9

5 U.S.C. § 553(b)(B) ............................................................................................. 10

5 U.S.C. § 553(d)(3) ............................................................................................. 10

5 U.S.C. § 706 ....................................................................................................... 14

5 U.S.C. § 706(2) ................................................................................................... 13

5 U.S.C. § 706(2)(D) ............................................................................................. 14

**OTHER AUTHORITIES**

22 C.F.R. § 40.41 ................................................................................................ 6, 7

22 C.F.R. § 40.41(b) ............................................................................................... 3

22 C.F.R. § 40.41(a) ............................................................................................. 15

84 Fed. Reg. 54,996 ................................................................................................ 3

84 Fed. Reg. 55,011 ................................................................................................ 3

84 Fed. Reg. at 55,011 .......................................................................................... 10

84 Fed. Reg. 57,142 ................................................................................................ 4

85 Fed. Reg. 8,087 .............................................................................................. 4, 8

Fed. R. Civ. Proc. 65(b) ..................................................................................... 9, 17

## PRELIMINARY STATEMENT

Plaintiffs seek this TRO in order to preserve the status quo pending this Court's previously scheduled preliminary injunction hearing because the Defendants, who sought extensive delays in briefing by claiming to this Court that there was no "impending emergency," now seek to implement one of the unlawful immigration restrictions challenged in this action in advance of the upcoming injunction hearing. Defendants' attempt to evade judicial review before enforcing a radical new rule on the "public charge" provisions of the Immigration and Nationality Act ("INA") should be rejected.

On January 21, 2020, Plaintiffs filed a motion for preliminary injunction to enjoin three coordinated federal agency actions, including implementation by Defendant Department of State ("DOS") of an Interim Final Rule (the "IFR"), that collectively would upend decades of settled law permitting the family members of U.S. citizens and lawful permanent residents to themselves become lawful permanent residents, by barring admission of low-income immigrants of color through a rewriting of the meaning of "public charge." Before Plaintiffs filed, Defendants, through counsel, urged Plaintiffs to forego preliminary relief because the IFR was not currently being enforced and was not being implemented at the time. After Plaintiffs filed, Defendants wrote to this Court seeking an extended briefing schedule, and motion to dismiss briefing, arguing that no impending emergency existed because the IFR was not implemented and DOS had not completed the steps for doing so. In response to this request, the Court consolidated briefing on the preliminary injunction with that on Defendants' intended motion to dismiss, and set a hearing on both for nearly two months after Plaintiffs' motion was filed. But Defendants have now created the very impending emergency that they told this Court did not exist, and immediate interim relief therefore is required.

Last week, Defendants wrote to this Court to inform it that, contrary to their prior statements that "no impending emergency that would require immediate court action" exists and that DOS "has not yet completed the steps needed to" implement the IFR, DOS will begin implementing the IFR on February 24 (next week)—nearly a month before this Court is set to hear Plaintiffs' motion to enjoin that very action. Such action will result in immediate concrete and irreparable harm to Plaintiffs and the immigrant communities to which they belong and for whom they serve, and will deprive this Court of an opportunity to hear and rule on Plaintiffs' requested injunction in advance of such harm. Immediate relief is therefore required to maintain the status quo, and Plaintiffs respectfully request the Court enter an order (i) holding in abeyance briefing on any motion to dismiss, (ii) enjoining implementation of the IFR, and (iii) rescheduling the hearing on the preliminary injunction motion to March 4, 2020 or any date not more than fourteen days from entry of such TRO.

Entry of an order to show cause and TRO is warranted here: *First*, as detailed in Plaintiffs' preliminary injunction briefing and set forth again below, the IFR blatantly violates the Administrative Procedure Act's ("APA") notice-and-comment requirements and is contrary to settled interpretations of the INA, and therefore must be set aside under the APA. *See* Dkt. 44, Memorandum of Law in Support of Motion for Preliminary Injunction (hereinafter "PI Br."), at 18–25. *Second*, implementation of the IFR will result in immediate and irreparable harm to Plaintiffs by creating the risk of indefinite family separation, chilling use of vital public benefits critical to health and welfare, and requiring the diversion of substantial resources while frustrating the organizational Plaintiffs' mission. *See id.* at 41–46. *Finally*, the equities favor entry of a TRO. Plaintiffs did not object to consolidated briefing or the March 17 hearing date in significant part based on Defendants' representations that the IFR was *not* being implemented.

The government has now gone back on its word.  Absent a TRO, Plaintiffs will be deprived of an opportunity to be heard, and this Court's jurisdiction will be compromised as it will be deprived of the opportunity to rule on Plaintiffs' injunction request.

## FACTS

**I.**   **Plaintiffs Sought to Enjoin Implementation of the IFR Because It Rewrites Decades of Settled Understanding of the Meaning of Public Charge**

Implementation of the immigration scheme that the Trump Administration has promulgated would overturn decades of administrative interpretation of the statutory term "public charge" and result in the exclusion of countless immigrants, primarily low-income immigrants of color, from admission to the United States.

The Court has already held that a similar rule promulgated by the Department of Homeland Security ("DHS" and the "DHS Rule"), likely contravenes the INA's definition of "public charge" and is thus contrary to law in violation of the APA. That ruling is currently on appeal in the United States Court of Appeals for the Second Circuit, which appeal is scheduled to be argued on March 2, 2020.[1]

On October 11, 2019, the very same day that three of five federal courts considering the DHS Rule enjoined it, DOS published the IFR—a rule that, like the DHS Rule, redefined "public charge" as a person likely to receive one or more specified "public benefits" in any amount for more than 12 months in any 36-month period. 84 Fed. Reg. 54,996; 22 C.F.R. § 40.41(b) (2019). DOS only published the IFR *four days* before it was to take effect, and invoked "good cause" to bypass the APA's notice and comment requirements. 84 Fed. Reg. 55,011. DOS predicated its emergency implementation on the argument that doing so was necessary to ensure consular

---

[1] On January 27, 2020, the U.S. Supreme Court granted the defendants' request for a stay of the Court's October 11 order, permitting the DHS Rule to go into effect pending the outcome of the appeal. USCIS has announced that the DHS Rule will be implemented effective February 24, 2020, the same day Defendants seek to implement the IFR.

officers (who operate under DOS rules) and DHS officials (who would be operating under the DHS Rule), made public charge determinations using a consistent scheme. *Id.* Although a full year had passed since DHS had published its October 2018 Notice of Proposed Rulemaking ("NPRM") seeking 60 days of public comment on the DHS Rule, DOS had made no attempt to comply with basic APA notice-and-comment requirements for its own parallel rule in the intervening months.[2]

On January 21, 2020, Plaintiffs filed a motion seeking a preliminary injunction against the implementation of the IFR and two other Federal Government actions that impact the ability of family members of U.S. citizens and lawful permanent residents to become lawful permanent residents themselves (together, the "Consular Rules"). These actions include revisions to the public charge guidelines in the DOS's Foreign Affairs Manual ("FAM"), which sets policy for consular processing of intending immigrants seeking admission (the "FAM Revisions"), and a "Presidential Proclamation Suspending the Entry of Immigrants Who Will Financially Burden

---

[2] Two weeks after publication of the IFR, on October 24, 2019, DOS announced that it would seek notice and comment on a form necessary for implementing the IFR. Public Charge Questionnaire, 84 Fed. Reg. 57,142 (Oct. 24, 2019). Last week, on February 12, 2020, DOS published a "Notice of Intent to Request Emergency Processing of Information Collection: Public Charge Questionnaire" indicating that it would be seeking emergency permission from OMB to begin using the form, the DS-5540 by February 24, 2020, despite the ordinary notice and comment process commenced on October 24, 2019 not yet being complete. 85 Fed. Reg. 8,087, *available at* https://www.federalregister.gov/documents/2020/02/12/2020-02866/notice-of-intent-to-request-emergency-processing-of-information-collection-public-charge.   Although the agency represented that the forthcoming request for permission to publish would include a response to the comments received from the public, no such request or response has been published in the Federal Register to date. Even if the agency publishes the request and response to comments later today, that would be only two business days before the agency intends to start implementing the IFR and using the form on February 24.  Notably, the circumstances do not constitute an "emergency" that would justify bypassing ordinary process. Such emergencies are reserved for natural disasters and missing a court-ordered or statutory deadline. *See* Office of Information and Regulatory Affairs, *A guide to the Paperwork Reduction Act: Types of PRA clearance*, Digital.gov (accessed Feb. 19, 2020) *available at* https://pra.digital.gov/clearance-types/. Neither circumstance is present here.

the Health Care System," and accompanying agency implementing actions, which would work to bar entry by immigrant visa applicants and visa holders who lack certain forms of health care coverage (the "Proclamation"). Plaintiffs have argued that the Consular Rules, as implemented by the Defendant agencies, violate the APA and INA, and exceed the legal authority of Defendants. In seeking to have these actions enjoined, Plaintiffs sought to prevent significant and irreparable harm that would likely result in thousands of individuals foregoing public benefits to which they are lawfully entitled, intending immigrants being denied visas, and indefinite family separation, among other disastrous consequences.

Individual Plaintiffs in this case, Brenda Doe, Carl Doe, Diana Doe, and Eric Doe, are intending immigrants or spouses of intending immigrants who face serious risk of family separation and may have foregone available benefits to which they are entitled. PI Br. 16–17. The organizational Plaintiffs are nonprofit organizations that provide a variety of services, including health, housing, legal and advocacy services, to immigrants and/or intending immigrants. *Id.* at 17. As a result of the Consular Rules, each organization has suffered or is in immediate danger of suffering irreparable harm through the substantial diversion of the organizations' resources and frustration of their missions. *Id.*

## II. Defendants Attempted to Avoid an Injunction, and then Delay any Hearing, by Making Representations About the IFR's Implementation That Were Not True

Defendants have sought to avoid Plaintiffs' filing for an injunction of the Consular Rules and, after failing to prevent that motion, attempted to delay any hearing on the matter. On January 15, 2020, Plaintiffs' counsel wrote to counsel for Defendants advising of Plaintiffs' intent to file a motion for preliminary injunction and requesting Defendants' consent to additional pages. *See* Declaration of Andrew Ehrlich ("Ehrlich Decl."), Ex. 1.

Defendants' counsel responded the same day to that message urging consolidating briefing on the preliminary injunction motion with briefing on Defendants' intended motion to dismiss, which Defendants intended to file on March 2. Ehrlich Decl., Ex. 2. Defendants justified the delay by noting in part: "We do not believe there is any emergency that would require immediate action, particularly given that two of the three challenged actions are not currently being applied: . . . The State Department has also not yet implemented its October 2019 rule amending 22 C.F.R. § 40.41 [the IFR], and it does not intend to do so until a new form for information collection has been approved by the Office of Management and Budget. The State Department has not yet completed the steps needed to seek approval." *Id.*

On January 16, 2020, Plaintiffs' counsel informed Defendants' counsel that Plaintiffs were "unaware of anything binding the Government beyond representations of counsel" concerning the IFR's implementation. Ehrlich Decl., Ex. 3. In this message, Plaintiffs' counsel offered to consolidate briefing and agree to a reasonable schedule "provided that Defendants stipulate that they will refrain from implementing either Proclamation No. 9945 or the [IFR] pending a decision" on the parties' respective motions. *Id.*

Later that day, counsel for Defendants responded with a proposal to adjust Plaintiffs' proposed briefing schedule so that "defendants' first brief [would] be due no earlier than the current March 2 deadline for the motion to dismiss." Ehrlich Decl., Ex. 4. Counsel for the government also stated: "We can't agree to defer implementation of Proclamation No. 9945 or the [IFR] pending a ruling, but as noted earlier, neither action is being implemented at the moment." *Id.*

Plaintiffs filed their motion for preliminary injunction on January 21, 2020. The following day, January 22, Plaintiffs' counsel sent a message to counsel for Defendants to inform

Defendants that Plaintiffs would not oppose consolidated briefing and to explain that "in light of the uncertainty about potential [implementation] of the challenged actions," Defendants' proposed schedule was "too protracted." *See* Letter from Defendants to Judge Daniels, ECF No. 46, at 3 (Jan. 22. 2020) ("January 22 Letter"). Counsel for Plaintiffs proposed a schedule under which Defendants' first brief would be due by February 11, 2020, Plaintiffs' second brief would be due by February 25, 2020, and Defendant's second brief would be due by March 2, 2020. *Id.* at 3.

On January 22, 2020, the day following Plaintiffs' filing of a motion for preliminary injunction, Defendants wrote to the Court requesting a consolidated briefing schedule that was far more protracted. January 22 Letter at 1. In this letter, Defendants requested "that the Court extend the time for the defendants to respond to the plaintiffs' motion for preliminary injunction." *Id.* Defendants requested a briefing schedule in which Defendants' first brief would be due by March 2, 2020, Plaintiffs' second brief would be due by March 16, 2020, and Defendants' second brief would be due by March 30, 2020. *Id.* at 1.

Defendants' letter represented that such a delay would not be consequential: "***There is no impending emergency that would require immediate court action on any of the three challenged actions.*** At the moment, two of the three challenged actions are not being applied: Enforcement of Proclamation No. 9945 is currently restricted by a preliminary injunction. . . [and the Government] is complying with it while it remains in effect. The Department of State also has not yet implemented its October 2019 Rule amending 22 C.F.R. § 40.41, and it does not intend to do so until a new form for information collection has been approved by the Office of Management and Budget. The Department of State has not yet completed the steps needed to

seek approval. . . *The timing of plaintiffs' request for relief suggests that they are not likely to suffer material harm from a short delay in briefing*." January 22 Letter at 2 (emphasis added).

In response to Defendants' representations in their January 22 letter, the Court ordered a revised briefing schedule on January 23, 2020. Order, ECF No. 47 (Jan. 23, 2020). The Court scheduled the Defendants' consolidated brief to be due by February 13, 2020, Plaintiffs' second brief to be due by February 27, 2020, and Defendants' second brief to be due by March 12, 2020; oral argument is scheduled for March 17, 2020. *Id.* This schedule provided Defendants additional time to respond to Plaintiffs' briefing—an additional nine days to respond to Plaintiffs' motion for preliminary injunction and an additional twenty-three days for Defendants' second brief.

In spite of Defendants' assurances that there was "no impending emergency" necessitating a speedy response to Plaintiffs' motion, last week Defendants wrote to this Court to inform it that DOS would begin implementing the IFR on February 24, 2020—before the Court would have the opportunity to review complete briefing, hear argument, or rule on the requested injunction. Letter, ECF No. 50 (Feb. 11, 2020) ("February 11 Letter"). One day later, on February 12, 2020, Defendants' published a "notice of intent" to seek emergency approval from OMB to begin using by February 24, 2020 the DS-5540 form necessary to implementing the IFR. *See* 85 Fed. Reg. 8,087.

## ARGUMENT

"It is well established that in this Circuit the standard for an entry of a TRO is the same as for a preliminary injunction." *Andino* v. *Fischer*, 555 F. Supp. 2d 418, 419 (S.D.N.Y. 2008). Rule 65 authorizes a court to issue a preliminary injunction where a plaintiff demonstrates that: (i) she is likely to prevail on the merits; (ii) she is likely to suffer irreparable harm in the absence of such relief; (iii) the balance of equities is in her favor; and (iv) an injunction is in the public interest. *Winter* v. *Nat. Res. Def. Counsel*, 555 U.S. 7, 20 (2008). A court may issue a TRO if

"specific facts in an affidavit or verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." *See* Fed. R. Civ. Proc. 65(b).

## I.   Plaintiffs Are Likely to Succeed on Claims that the IFR is Contrary to Law, Was Promulgated in Violation of the APA, and Is Arbitrary and Capricious

Plaintiffs are likely to succeed on their claims that the IFR violates the APA.  Like the DHS Rule that this Court preliminarily enjoined, the IFR is inconsistent with the meaning of "public charge" in the INA and thus contrary to law.   Also—and unlike the DHS public charge rule that the Court enjoined—the IFR also blatantly violates the procedural requirements of the APA because DOS did not issue a proposed rule or seek public comment, invoking a "good cause" exemption that does not apply in non-emergency circumstances.   Moreover, the IFR is arbitrary and capricious because it implements a confusing totality of the circumstances test, which lends itself to arbitrary and discriminatory enforcement, it relies on facially arbitrary factors, and DOS did not provide any rationale at all for its departure from the 1999 Field Guidance that governed public charge determinations for both DHS and DOS.

*First*, the IFR was promulgated in violation of the procedural requirements of the APA. As detailed in the briefing on the preliminary injunction, the IFR was published merely *four* days before it was to take effect on October 15, 2019.  PI Br. 11.  The APA requires an agency to provide the public "an opportunity to participate in the rule making through submission of written data, views or arguments" by publishing a proposed rule "not less than 30 days before its effective date."   5 U.S.C.  § 553(a)–(d).   These requirements "are not mere formalities" and "serve the public interest by providing a forum for the robust debate of competing and frequently complicated policy considerations." *Nat. Resources Defense Council* v. *Nat'l Highway Traffic Safety Admin.*, 894 F.3d 95, 115 (2d Cir. 2018) (hereinafter "*NHTRSA*").  DOS clearly ran afoul

of these requirements, requiring that the IFR be set aside. *E.g.*, *Mack Trucks, Inc.* v. *EPA*, 682 F.3d 87, 95–96 (D.C. Cir. 2012) (vacating rule where agency failed to comply with APA's notice and comment requirements).

DOS wrongly asserts that the IFR did not need to comply with the formal notice and comment requirements because the "good cause" exception of 5 U.S.C. § 553(b)(B) and (d)(3) applied. 84 Fed. Reg. at 55,011. This is because, according to DOS, absent immediate implementation of the IFR, the public charge standards between DHS and DOS would cause "inconsistent adjudication standards and different outcomes between determination of visa eligibility and determination of admissibility at a port of entry." *Id.* However, the "good cause" exception is limited to circumstances where notice-and-comment would be "impracticable, unnecessary, or contrary to the public interest." 5 U.S.C. § 553(b)(B). These circumstances do not exist here.

As the Second Circuit has made clear, the "impracticable" prong is narrow, and generally limited to "emergency situations in which a rule would respond to an immediate threat to safety, such as to air travel, or when immediate implementation of a rule might directly impact public safety." *NHTSA*, 894 F.3d at 114. *See also, e.g., Council of the S. Mountains, Inc. v. Donovan,* 653 F.2d 573, 581 (D.C. Cir. 1981) (noting the case was one of "life-saving importance" involving miners in a mine explosion). There is no such emergency here. The "unnecessary" prong is similarly inapplicable. It "is confined to those situations in which the administrative rule is a routine determination, insignificant in nature and impact, and inconsequential to the industry and to the public." *NHTSA*, 894 F.3d at 114 (citation omitted). Nor does DHS's imminent implementation of its Rule meet the "public interest" standard. "[U]rgency alone [is] sufficient only when a deadline imposed by Congress, the executive, or the

judiciary requires agency action in a timespan that is too short to provide a notice and comment period." *United States* v. *Reynolds*, 710 F.3d 498, 511 (3d Cir. 2013). Another agency's implementation of a similar rule does not meet that standard, especially given that for more than two years, DOS has been content to apply the January 2018 FAM Revisions, despite their inconsistency with longstanding 1999 Field Guidance in place at DHS.

If Defendants' rationale were sufficient to avoid the APA's procedural requirements, an agency could "simply wait until the eve of a statutory, judicial, or administrative deadline" and then claim there was good cause to promulgate rules without providing notice and an opportunity to comment. *NHTSA*, 894 F.3d 95, 114-15 (2d Cir. 2018).

Moreover, Defendants' own actions undermine their claim that the "good cause" exception applies. DHS issued its Notice of Proposed Rulemaking in October of 2018. Defendants failed to act during the full year in which DHS was considering comments on their proposed public charge rule, as well as the two months following publication of the final DHS Rule in August of 2019. Instead, they waited until just *four days* before the DHS Rule was to go into effect before releasing the IFR. The "court need not defer to an agency's own finding of good cause," especially in cases where Defendants' rationale is undermined by "the agency's own conduct" in creating a delay. *Make the Rd. N.Y.* v. *McAleenan*, 405 F. Supp. 3d 1, 45, 52 (D.D.C. 2019). Indeed, the Second Circuit has made clear that it "cannot agree . . . that an emergency of [the agency's] own making can constitute good cause." *NHTSA,* 894 F.3d at 115 (quoting *Nat. Res. Def. Council* v. *Abraham*, 355 F.3d 179, 205 (2d Cir. 2004)).[3]

---

[3] To avoid any harm caused by inconsistency in public charge standards, DOS could have requested, and could still request, that DHS delay implementation of its Rule until DOS has complied with notice and comment requirements.

11

*Second*, the IFR is contrary to the INA's statutory definition of public charge and thus violates the APA.   As detailed in Plaintiffs' preliminary injunction briefing, the IFR is substantively indistinguishable from the DHS Rule.  *See* PI Br. 12, 19.  And multiple federal courts, including this one, have already held that plaintiffs in actions before them are likely to prevail on arguments that the DHS Rule is contrary to law.  *See Make the Rd. N.Y.* v. *Cuccinelli*, No. 19 Civ. 7993, 2019 WL 5484638 (S.D.N.Y. Oct. 11, 2019) (stay granted on appeal); *see also* PI Br. 19–20 (collecting cases).  Because the IFR, like the DHS Rule, seeks to redefine "public charge" in a way that it has "*never* been understood" before, *Make the Rd. N.Y.*, 2019 WL 5484638, at *7 (emphasis in original), Plaintiffs are likely to establish that the IFR is contrary to law and violates the APA.

*Finally*, the IFR, like the DHS Rule that it replicates, PI Br. 26–30, is arbitrary and capricious.  As this Court held in enjoining the DHS Rule, "there is no logic to this framework." *Make the Rd. N.Y.*, 2019 WL 5484638, at *8.  If anything, the IFR is even more illogical.  The IFR directs government officials to make enforcement decisions based on a confusing totality of the circumstances test, including factors that are arbitrary on their face.  For example, the 12/36 threshold "entirely rework[s]" the public charge assessment "with no rational basis." *Id.* at *8–9. The English language proficiency factor is likewise arbitrary, especially since the IFR contains no standard for evaluating "proficient," lending itself to arbitrary and discriminatory enforcement.  Similarly, the fact that the IFR assigns negative weight to an applicant's age if they are under 18 or over 62 is entirely arbitrary.  An intending immigrant under 18 has their whole working life ahead of them; an intending immigrant over 62 is still well under the retirement age of most Americans.  In addition, DOS has offered no justification at all for departing from the 1999 Field Guidance.  The confusing totality of the circumstances test that the

IFR applies, the irrational factors it includes, and DOS's total lack of rationale for departing from the prior Field Guidance render the IFR arbitrary and capricious.

## II.   Plaintiffs Will Suffer Irreparable Harm Absent a Temporary Restraining Order

As demonstrated in detail in Plaintiffs' preliminary injunction briefing and the declarations of plaintiffs and experts, Plaintiffs will suffer substantial and concrete harm if the IFR is implemented on February 24, 2020.  PI Br. 41–46.  Because the IFR violates the Plaintiffs' statutory rights under the APA—which requires that such violations be "set aside" without regard to equitable considerations—a presumption of irreparable harm attaches.  5 U.S.C. § 706(2).  Moreover, the IFR will cause several injuries that this Court has already held constitute irreparable harms, including: depletion of organizational resources, frustration of institutional mission, increased risk of indefinite family separation, and deterrence from benefits for which Plaintiffs are otherwise qualified.  Each of these injuries independently satisfies the standard for irreparable harm.  *See Grand River Enter. Six Nations, Ltd.* v. *Pryor*, 481 F.3d 60, 66 (2d Cir. 2007) (defining irreparable harm as "an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial") (internal quotations omitted); *Mullins* v. *City of New York*, 626 F.3d 47, 55 (2d Cir. 2010) (holding that movants need only show "a *threat* of irreparable harm, not that irreparable harm already ha[s] occurred.").

The Government's failure to abide by the APA's statutory requirements creates a presumption of irreparable harm. This is because a "party seeking a statutorily-sanctioned injunction" is not required "to make an additional showing of irreparable harm." *City of N.Y.* v. *Golden Feather Smoke Shop, Inc.*, 597 F.3d 115, 120-21 (2d Cir. 2010). Rather, courts have long held that when "the defendants are engaged in, or about to be engaged in, the act or practices prohibited by a statute which provides for injunctive relief to prevent such violations,

irreparable harm to the plaintiffs need not be shown." *E.g. Burlington N. R. Co.* v. *Dep't of Revenue of Wash.*, 934 F.2d 1064, 1076 (9th Cir. 1991). Here, the Plaintiffs seek a "statutorily-sanctioned injunction" under the APA, *Golden Feather*, 597 F.3d at 121, which requires that courts "*shall* . . . hold unlawful and set aside agency action" performed "without observance of procedure required by law." 5 U.S.C. § 706(2)(D) (emphasis added). Thus, "Congress, through 5 U.S.C. § 706, explicitly removed from the courts the traditional equity balancing that ordinarily attends decisions whether to issue injunctions." *Fish* v. *Kobach*, 840 F.3d 710, 751 n.24 (10th Cir. 2010) (citations and internal quotations omitted). Instead, under § 706, when the plaintiffs "show a likelihood of success on the merits," as they have here, a presumption of irreparable harm attaches. *See Golden Feather*, 597 F.3d at 121 (holding that the plaintiff was "entitled to a presumption of irreparable harm" on showing a likelihood of success on the merits); *Fish*, 840 F.3d at 751 n.24 (suggesting that a presumption of irreparable injury is appropriate under § 706).

Moreover, this Court has already held that most of the injuries here at issue constitute irreparable harms. Indeed, the government seems to concede as much, lamenting that "the validity of the [IFR] turns on some of the same issues that the Court has decided against the Government" in the context of the DHS Rule. Gov. PI Br. 1.

If the IFR is permitted to take effect, Plaintiffs, who work both with people seeking visas, as well as with their families in the U.S., will see an immediate spike in the urgent needs of the people they serve. As with the DHS Rule, implementation of the IFR will thereby cause irreparable harm by further "forcing [organizational Plaintiffs] to divert resources," and by "hinder[ing] their ability to carry out their missions." *MRNY*, 2019 WL 5484638 at *11; *see Centro de La Comunidad Hispana de Locust Valley* v. *Town of Oyster Bay*, 868 F.3d 104, 111 (2d Cir. 2017); *Saget* v. *Trump*, 375 F. Supp. 3d 350, 376 (E.D.N.Y. 2019) (holding that

organizations that need to shift resources to provide specific services in response to challenged policies have suffered irreparable harm). In order to address the extreme needs of clients and communities associated with the IFR's implementation, Plaintiffs are experiencing, and will continue to experience, potentially irretrievable losses of revenue, depletion of resources needed to tackle other major concerns, and further frustration of their missions. *See* PI Br. 46.

Similarly, implementation of the IFR will cause irreparable harm by "exposing [Plaintiffs] to . . . denial of [a] path to citizenship and potential deportation," *MRNY*, 2019 WL 5484638, at *11, and, in turn, subjecting Plaintiffs to a greater likelihood of indefinite family separation. PI Br. 42-43; *see, e.g.*, *Martinez* v. *McAleenan*, 385 F. Supp. 3d 349, 371 (S.D.N.Y. 2019) ("[C]ourts recognize the irreparable harms that stem from being unlawfully separated from family."). The IFR is in many ways more restrictive than the FAM Revisions, and will therefore uniquely exacerbate several already realized harms. For example, unlike the FAM Revisions, the IFR punishes a broad range of characteristics beyond past use of public benefits, including lack of English language proficiency, lack of private health insurance (a "heavily weighted" negative factor), age over 62, and numerous other additional factors weighed negatively under the new test. 22 C.F.R. § 40.41(a). These new factors will not only uniquely increase the risk of denial—and thereby the risk of family separation—as to the individual Plaintiffs, *see* PI Br. 43 n.32, but will also disproportionately harm Latino and Black immigrants, and place Mexicans and Central Americans at a much higher risk of exclusion than those of European descent. *See* PI Br. 42-43, Ex. 10, Van Hook Decl., ¶ 11.

Likewise, the IFR will cause irreparable harm by "punish[ing] individuals for their receipt of benefits," and "discourag[ing] them from lawfully receiving available assistance." *MRNY*, 2019 WL 5484638, at *11. The individual Plaintiffs are already experiencing this latter

category of harm, particularly with regard to the chilling of health care benefits. *See* PI Br. 44-45; *see also Strouchler* v. *Shah*, 891 F. Supp. 2d 504, 522 (S.D.N.Y. 2012) ("[T]he mere *threat* of a loss of medical care . . . even if never realized, constitutes irreparable harm."). But here, too, the IFR's implementation will uniquely exacerbate these harms, not only as to individuals within the Rule's scope, but also as to those who would not be excludable under its provisions. PI Br. 44 (citing *inter alia* Ex. 9, Ku Decl., Ex. B, ¶ 29 (describing how implementation of the DHS Rule would substantially increase the rate of denials and chilling, over and above the rates associated with the mere threat of implementation); *id.*, ¶ 14 (opining that the impact of the IFR will be comparable to the impact of the DHS Rule)).

### III.    The Balance of Equities Support a Temporary Restraining Order

"[B]ecause the Government is a party, and 'the Government's interest *is* the public interest,' the balance of hardships and public interest merge as one factor." *Saget*, 375 F. Supp. 3d at 339–340 (quoting *Dep't of Commerce*, 351 F. Supp. 3d at 673). It is satisfied here.

There is no public interest in allowing the IFR to take effect, as "there is generally no public interest in the perpetuation of unlawful agency action." *League of Women Voters* v. *Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016). To the contrary, there is a substantial public interest "in having governmental agencies abide by the federal laws that govern their existence and operations." *Washington* v. *Reno*, 35 F.3d 1093, 1103 (6th Cir. 1994).

Here, even more than in the ordinary case, the balance of the equities strongly favors the entry of a TRO, because Plaintiffs seek, by virtue of the TRO, to preserve the Court's jurisdiction to adjudicate their request to enjoin the IFR before it is implemented. In the absence of a TRO, not only would Plaintiffs suffer irreparable injury for the reasons set forth above, they also would suffer several additional injuries.

Most significantly, they would be precluded from obtaining judicial review of the IFR *before* its implementation, notwithstanding that they moved for a preliminary injunction weeks ago. And the reason that the IFR would escape review prior to implementation is attributable directly to the government's representations to Plaintiffs and the Court that there is "no impending emergency" requiring expedition, by implication because the IFR would not be implemented any time soon. The government has now abandoned those representations, and taken a different course. The only equitable consequence is that the effect of the IFR should be enjoined until the Court hears Plaintiffs' motion for preliminary injunction. It would be manifestly inequitable if, due to a bait-and-switch by the government, the IFR were permitted to take effect without this Court's ability to hear Plaintiff's motion for preliminary injunction.

Defendants requested consolidated briefing of Plaintiffs' motion for preliminary injunction and Defendants' motion to dismiss. Plaintiffs agreed in light of Defendants' representations that no impending government action would impede orderly judicial review. The government's representation is now no longer true.   As such, Plaintiffs respectfully request that the Court adjourn briefing on the Defendants' motion to dismiss until after it has heard the motion for preliminary injunction, and require Plaintiffs at this time simply to submit their reply on the injunction only on the date previously scheduled, February 27.  If the Court grants the requested TRO, Plaintiffs will be ready to appear at a hearing on the motion for preliminary injunction at the Court's earliest convenience thereafter, and certainly within the fourteen days prescribed by Rule 65(b).

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court grant the order to show cause (i) suspending briefing on Defendants' motion to dismiss pending resolution of Plaintiffs' preliminary injunction, (ii) entering a temporary restraining order enjoining

Defendants from implementing the IFR, and (iii) rescheduling the hearing on Plaintiffs'

preliminary injunction to March 4, 2020, or another date not more than 14 days after entry of the

order to show cause.

Dated: New York, New York
     February 18, 2020

                              PAUL, WEISS, RIFKIND, WHARTON &
                              GARRISON LLP

                              By: _____

                                   Andrew J. Ehrlich
                                   Jonathan H. Hurwitz
                                   Christopher L. Filburn

                              1285 Avenue of the Americas
                              New York, New York 10019-6064
                              (212) 373-3000
                              aehrlich@paulweiss.com
                              jhurwitz@paulweiss.com
                              cfilburn@paulweiss.com


                              THE LEGAL AID SOCIETY

                              Susan E. Welber, Staff Attorney, Civil Practice,
                              Law Reform Unit

                              Janet Sabel, Attorney-in-Chief
                              Adriene Holder, Attorney-in-Charge, Civil Practice
                              Judith Goldiner, Attorney-in-Charge, Law Reform
                              Unit
                              Susan Cameron, Supervising Attorney, Law Reform
                              Unit
                              Hasan Shafiqullah, Attorney-in-Charge,
                              Immigration Law Unit
                              Rebecca Novick, Director, Health Law Unit
                              Lillian Ringel, Staff Attorney, Health Law Unit

                              199 Water Street
                              New York, New York  10038
                              (212) 577-3320
                              JSabel@legal-aid.org
                              AHolder@legal-aid.org
                              JGoldiner@legal-aid.org
                              SCameron@legal-aid.org
                              SEWelber@legal-aid.org
                              HHShafiqullah@legal-aid.org
                              RANovick@legal-aid.org
                              LRingel@legal-aid.org

CENTER FOR CONSTITUTIONAL RIGHTS

Ghita Schwarz
Brittany Thomas
Baher Azmy

666 Broadway
7th Floor
New York, New York 10012
(212) 614-6445
gschwarz@ccrjustice.org
bthomas@ccrjustice.org
bazmy@ccrjustice.org


THE NATIONAL IMMIGRATION LAW
CENTER

Joanna Elise Cuevas Ingram (JC 2704)

P.O. Box 170392
Brooklyn, NY 11217
(213) 377-5258
cuevasingram@nilc.org

Nicholas Espíritu (admitted *pro hac vice*)
3450 Wilshire Blvd., 108-62
Los Angeles, CA 90010
espiritu@nilc.org

Max S. Wolson* (*pro hac vice* pending)
P.O. Box 34573
Washington, DC 20043
wolson@nilc.org

Tanya Broder (admitted *pro hac vice*)
2030 Addison Street, Suite 420
Berkeley, CA 94704
broder@nilc.org

*Counsel for Plaintiffs*